**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Uchechukwu EGBUJO | ) | 3:21-CV-01450 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACKSON LEWIS, P.C. | ) | SEPTEMBER 29, 2022 |
| *Defendant*. | ) | |

<u>**MEMORANDUM OF DECISION**</u>
**RE: DEFENDANT'S MOTION TO DISMISS *AMENDED COMPLAINT* (ECF NO. 23)**

Kari A. Dooley, United States District Judge:

Plaintiff, Uchechukwu Egbujo ("Plaintiff"), commenced this defamation action against Defendant Jackson Lewis, P.C. ("Defendant"), in the Superior Court for the State of Connecticut. Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, citing diversity of citizenship. Defendant is a law firm previously hired by Plaintiff's employer, Norwalk Hospital, to investigate allegations that Plaintiff had sexually assaulted or harassed another Norwalk Hospital employee. Plaintiff's defamation claim arises out of the reports Defendant submitted to its client, Norwalk Hospital, which included allegedly defamatory statements relayed to Defendant by Norwalk Hospital employees. Pending before the Court is Defendant's motion to dismiss the Amended Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, Defendant's motion to dismiss is GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), the "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to

---

[1] On December 20, 2021, Defendant filed a Motion to Dismiss the Complaint, after which Plaintiff filed an Amended Complaint on January 7, 2022. *See* ECF Nos. 20, 21. Defendant filed the instant Motion to Dismiss the Amended Complaint on January 21, 2022. *See* ECF No. 23.

1

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id.* Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Twombly*, 550 U.S. at 555–56. On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft*, 556 U.S. at 678.

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint. . . ." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). However, the Court also "may consider documents attached to the complaint or incorporated into [it] by reference." *Salerno v. City of Niagara Falls*, No. 20-3749-CV, 2021 WL 4592138, at *1 (2d Cir. 2021) (internal quotation marks omitted); *see Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("[F]or purposes of a motion to dismiss, we have deemed

a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

## Allegations

The Court accepts as true the allegations in Plaintiff's Amended Complaint, which are as follows. While a medical resident at Norwalk Hospital, another medical resident accused Plaintiff of sexual assault. Am. Compl. ¶ 5. In response, Norwalk Hospital hired Defendant to investigate that accusation. *Id.* at ¶ 7. Two of Defendant's employees conducted the investigation, interviewing the accuser, the accused and other Norwalk Hospital employees. *Id.* at ¶¶ 8, 9. During its investigation, Defendant heard "several false, defamatory" statements[2] about Plaintiff, which were republished in a written report produced for the client, Norwalk Hospital. *Id* at ¶¶ 10, 12. Defendant also submitted a second report to Norwalk Hospital in which it again republished these defamatory statements. *Id.* at ¶ 14. Defendant also transmitted the second report to Plaintiff's attorney. *Id.* Plaintiff alleges, on information and belief, that other persons have seen the second report. *Id.* at 16. And as a result of Defendant's republication of the defamatory statements, Plaintiff has suffered harm to his career and reputation. *Id.* at ¶ 18.

## Discussion

Plaintiff would have this Court conclude that an attorney hired to investigate employee misconduct may be found liable for defamation to that employee, if, following the conclusion of the investigation, the attorney discloses to the employer the content of witness statements made during the investigation. The law does not support such a conclusion, and indeed precludes any such holding.

---

[2] These statements include: (1) that Plaintiff "sexually harassed" the accuser; (2) that Plaintiff "assaulted" the accuser; (3) that Plaintiff "often touches women in the workplace"; and (4) that Plaintiff "may have issues with inappropriate touching," among others. *Id.* at ¶ 10.

Defendant first argues that Plaintiff has not plead a prima facie case of defamation because he did not adequately allege that Defendant published any defamatory statements to a third party. Alternatively, Defendant argues that even if Plaintiff's allegations of publication are sufficient, Defendant's statements to its client are entitled to a qualified privileged. Plaintiff disagrees with both assertions.

*Defamation*

A defamatory statement is a "communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him…" *Bailey v. Nexstar Broadcasting*, *Inc.*, NO. 3:19-cv-00671 (VLB), 2020 WL 1083682, at *5 (D. Conn. Mar. 6, 2020). "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Simms v. Seaman*, 308 Conn. 523, 547–48, 69 A.3d 880 (2013).[3] The test of a defamation complaint's sufficiency is "whether it is detailed and informative enough to enable [a] defendant to respond…" *Kelly v. Schmidberger*, 806 F.2d 44,46 (2d Cir. 1986). Thus, a plaintiff must plead "what defamatory statements were made…when they were made, and to whom they might have been made." *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997). And to "constitute a publication it is necessary that the defamatory matter be communicated to someone other than the person defamed." Restatement, Torts § 577 (1938).

---

[3] Although not relevant here, defamation claims also require a showing of falsity, as communications of true statements do not constitute defamation. *See Gleason v. Smolinski*, 319 Conn. 394, 431, 125 A.3d 920 (2015) ("It is well settled that for a claim of defamation to be actionable, the statement must be false…").

Defendant asserts that Plaintiff has not and cannot plausibly allege that any defamatory statements were published to a third person, which Defendant argues is fatal to his claim. *See Telkamp v. Vitas Healthcare Corp. Atlantic*, No. 3:15-CV-726 (JCH), 2016 WL 777906, at \*17 (D. Conn. Feb. 29, 2016) (dismissing a defamation claim where the plaintiff did not plead facts from which the court could conclude that statements were published to a third party); *Alvarado v. PBM, LLC*, No. 3:21CV01481 (SALM), 2022 WL 3566630, at \*5 (D. Conn. Aug. 18, 2022) (dismissing a defamation claim where the plaintiff did not identify any "third party" nor could one be inferred from the allegations of the complaint); *Bailey v. Nexstar Broadcasting, Inc.,* No. 3:19-cv-00671 (VLB), 2020 WL 1083682, at \*6 (finding sufficient publication where a defendant corporation internally distributed statements to management and shared circumstances of plaintiff's termination with his former co-workers orally and in writing).

Plaintiff's primary theory of publication is that Defendant's communication with its own client, Norwalk Hospital, constitutes publication to a third party. He is wrong. Fundamental principles of agency[4] recognized in the law of Connecticut defeat this theory. The lawyer-client relationship is one of agent-principal. *See U.S. v. Int' Broth. Of Teamsters*, *Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 986 F.2d 15, 20–21 (2d Cir. 1993). An attorney is the client's agent. *See Ackerman v. Sobol Family Partnership, LLP,* 298 Conn. 495, 509–11, 4 A.3d 288 (2010). As such, any knowledge the agent has is imputed to the client. *West Haven v. U.S. Fidelity & Guaranty Co.,* 174 Conn. 392, 395 A.2d 741 (1978) ("[N]otice to, or knowledge of, an agent, while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal."). It follows that any information

---

[4] Agency is the "fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *See* Restatement (Second) of Agency § 1 (1958).

gained by Defendant during its investigation was already imputed to Norwalk Hospital.[5] Defendant's presentation of the report of its investigation to Norwalk Hospital, therefore, cannot constitute publication to a third party for purposes of Plaintiff's defamation claim. In communicating with its principal/client, Defendant was, in essence, communicating with itself. *See, Hoch v. Loren,* 273 So. 3d 56, 59 (Fla. 4th DCA 2019) (dismissing defamation claim against attorney because the purportedly defamatory communication between the attorney and his client was "tantamount to the principal talking to itself.").[6]

Putting aside the unassailable principles of agency, Connecticut law has not recognized a defamation claim based upon communications between an attorney and a client when such communications were had within the context of and in relation to the purpose for which the attorney was hired. Plaintiff cites no authority to the contrary. And the likely reason seems particularly obvious in the context of allegations of sexual harassment or assault in the workplace insofar as Title VII imposes a duty on an employer to act on such allegations. *Stockley v. AT&T Info. Sys., Inc.,* 687 F. Supp. 764, 769, 768–80 (E.D.N.Y. 1988). Indeed, the Equal Employment Opportunity Commission's *Guidelines of Discrimination Because of Sex* indicate that an employer, upon receiving notice or otherwise becoming aware of alleged harassment must take "prompt remedial action reasonably calculated to end sexual harassment." 29 C.F.R. § 1604.11.

---

[5] Plaintiff alleges that "[a]ccording to information and belief, other persons have seen the second report," but neither identifies those other persons nor alleges that Defendant published the report *to* those unidentified persons. *See* Am. Compl. ¶ 16. He further notes that he is "uncertain" if the second report was published to persons outside of Norwalk Hospital and his attorney. *Id.*

[6] Plaintiff takes issue with Defendant's citation to *Hoch* as an inappropriate effort to import Florida law into Connecticut. Pl. Opp. Mem., ECF No. 25, at 5. However, both Connecticut law and Florida law require publication to a third party to establish a claim for defamation. *See, e.g., Solis v. Okeechobee Shooting Sports, LLC,* No. 19-14440-CIV-ROSENBERG/MAYNARD, 2020 WL 3089094, at *3 (S.D. Fl. Mar. 26, 2020). And both recognize the principles of agency discussed herein. *See Survivor v. Our Kids of Miami-Dade/Monroe, Inc.,* No. 11-CIV-24611-SEITZ, 2016 WL 950952, at *10 (S.D. Fla. Mar. 7, 2016) (finding that under established agency and attorney-client principles, an attorney's knowledge is imputed to his client); *see also First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.,* 899 F.2d 1045, 1060 (11th Cir. 1990) ("[T]he general rule is that a principal is chargeable with and bound by the knowledge of his agent while acting within the scope of his authority.").

And "[t]he importance of a thorough investigation cannot be overstated."[7] *Creating a Harassment-Free Workplace*, SE42 ALI-ABA at 1139.

To that end, attorneys hired by employers to conduct such an investigation must be able to collect and convey the findings without fear of defamation lawsuits.[8] The alternative would chill the well-established public policy in favor of "full and frank communications between attorneys and their clients." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 105 S. Ct. 1986; *see also McLaughlin v. Freedom of Information Comm'n*, 83 Conn. App. 190, 194–95, 850 A.2d 254 (2004). It would also interfere with the well-recognized public policy against sexual harassment in the workplace. *See Newsday, Inc. v. Long Island Typographical Union*, *No. 915, CWA, AFL-CIO*, 915 F.2d 840, 844 (2d Cir. 1990); *see also State v. AFSCME, Council 4, Local 391*, 125 Conn. App. 408, 416, 7 A.3d 931 (2010) (finding that a "well-defined and dominant public policy against sexual harassment in the workplace" could be explicitly discerned from Connecticut law). In sum, Plaintiff's theory of liability is advanced without any recognized authority under Connecticut law. It also runs counter to well-established and long-standing public policy in the state of Connecticut in favor of promoting unfettered attorney-client communications as well as reducing sexual harassment in the workplace. And in Connecticut, public policy often establishes the limits and contours of liability under the law. *See e.g., Greenwald v. Van Handel,* 311 Conn. 370, 88 A.3d 467 (2014) (Prohibiting medical malpractice action against a social worker because it would violate the public policy of the state to impose liability under the particular facts of the case, i.e., plaintiff sought compensation for injuries arising from the patient's volitional criminal conduct.); *Streifel v. Bulkley*, 195 Conn. App. 294, 224 A.3d 539 (Nurse's suit against a

---

[7] Indeed, many employers claim and preserve attorney-client and work product privileges in connection with oral or written investigation reports. *See Creating a Harassment-Free Workplace*, SE42 ALI-ABA 1125, 1139 (1999).
[8] The Court notes here that Plaintiff specifically alleges that the "administration of Norwalk Hospital hired Defendant to investigate the accusations and **report back** to said administration." Am. Compl. at ¶ 7 (emphasis added).

patient sounding in negligence was prohibited because public policy considerations weighed against imposing a duty of care on a patient to prevent injury to a medical provider during the provision of medical care.); *Wilson v. City of New Haven*, NNHCV106010876, 2017 WL 2111375, at *7 (Conn. Super. Ct. Apr. 19, 2017) (cause of action for wrongful death permitted because public policy places a duty on police officers to procure medical assistance for citizens in their custody even though the need for medical assistance derives from the citizen's illegal conduct). Accordingly, absent some indication from the appellate courts of the State of Connecticut that the circumstances alleged give rise to liability in defamation, the Court declines Plaintiff's invitation to recognize this novel and untested theory of defamation liability.[9]

Plaintiff alternatively argues that Defendant's communication with Plaintiff's attorney amounted to publication to a third party. But the agency principles discussed above also defeat this theory. Plaintiff and his attorney are in an agent-principal relationship. *See supra, Ackerman*, 298 Conn. at 509–11. Transferring information to Plaintiff's attorney is one in the same as transferring information directly to Plaintiff. *See supra*, *West Haven* 174 Conn. at 395; *see also* Deborah A. DeMott, *The Lawyer as Agent*, 67 Fordham L. Rev. 301, 308 (1998) ("Within the scope of the representation, what the lawyer knows the client is deemed to know" because the "lawyer's duties

---

[9] Defendant advances these policy arguments in the context of an argument that the communications are entitled to a qualified privilege under Connecticut law. In light of the agency principles discussed above, and in the absence of any authority supporting Plaintiff's theory of liability, the Court need not determine whether the circumstances alleged implicate a qualified privilege. That said, the Court notes that there is a strong federal policy favoring vigorous enforcement of federal civil rights statutes such as Title VII. *See Stockley*, 687 F. Supp. at 769. And private efforts to irradicate employment discrimination and harassment would be "undermined if statements made during investigations were not protected by a qualified privilege." *Id.* And the Connecticut Supreme Court has recognized, as a matter of law, that there is an intra-corporate communications privilege that applies to a report produced during an internal investigation. *Torosyan v. Boehringer Ingelheim Pharms, Inc.,* 234 Conn. 1, 29, 662 A.2d 89 (1995) The Court sees no reason why the intra-corporate communication privilege would not extend to the corporation's agents, to include its attorneys. Notwithstanding, the question of qualified privilege also requires an assessment of whether the privilege, under the circumstances alleged, was abused, thus removing any protection it might have otherwise afforded. *See id.* at 30. While the Amended Complaint does not appear to include any allegations from which an abuse of the privilege might be gleaned, the Court, for the reasons discussed above, does not reach these issues.

to the client…are grounded in agency.")[10] And no action for defamation exists where a defendant publishes the defamatory statements only to the plaintiff. *See Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004).

**Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED. The Clerk of Court is directed to enter judgment in favor of the Defendant and close this file.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of September 2022.

 */s/ Kari A. Dooley*

KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff argues that there is no basis to conclude that the communication with Plaintiff's counsel was made in the course of the attorney's representation of Plaintiff *vis a vis* the investigation into his workplace misconduct. The Court finds this argument, at best, disingenuous. The *only* inference to be drawn from the Amended Complaint is that Plaintiff's attorney, to whom the allegedly defamatory statements were communicated, was retained in connection with the allegations of misconduct.